NO. 08-10290

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Appellee,

VERSUS

ANDREW ACOSTA,
Appellant.

_____

ON APPEAL FROM A JUDGMENT IN
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
DOCKET NUMBER CR. 05-1319-PHX-MHM

_____

**APPELLANT'S REPLY BRIEF**


RESPECTFULLY SUBMITTED

PHILIP E. HANTEL
Louisiana Bar No. 25078
Arizona Bar No. 024963
710 W. Roosevelt St.
Phoenix, Arizona 85007
(602) 252-1099

Counsel for Andrew Acosta

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................3

ARGUMENT........................................................................................5

CONCLUSION....................................................................................16

CERTIFICATE OF COMPLIANCE.......................................................17

CERTIFICATE OF SERVICE.............................................................18

## TABLE OF AUTHORITIES

<u>**Case Law**</u>

*Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir. 1998)..................................6

*Lowe v. McDonald*, 221 F.2d 228 (9th Cir. 1955)....................................15

*Smith v. Phillips,* 455 U.S. 209, 222, 102 S.Ct. 940 (1982)....................6

*Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir. 1979)..................................6

*United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995)....................11, 15

*United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977).........................5

*United States v. Calhoun,* 544 F.2d 291 (6th Cir. 1976).......................8, 9

*United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260 (10th Cir. 1999).................6

*United States v. Cousins,* 429 F.2d 1271 n. 1 (9th Cir. 1970)................................14

*United States v. Dixon,* 413 F.3d 540 (6th Cir. 2005)..............................................10

*United States ex rel. Robinson Racheria Citizens Counsel v. Borneo, Inc,* 971 F.2d 244-48 (9th Cir. 1992)...........................................14

*United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000)..................................12

*United States v. Huffman*, 1996 U.S. App. LEXIS 1655, (9th Cir. 1996)...............11

*United States v. Julio,* 214 F.3d 1109, 1114 (9th Cir 2000)......................................7

*United States v. Langford*, 802 F.2d 1176, 1178-79 (9th Cir. 1986).......................10

*United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993).........................8, 10

*United States v. Maddox,* 944 F.2d 1223 (6th Cir. 1991)..........................................9

*United States v. Monsour,* 893 F.2d 126, (6th Cir. 1990)..........................................9

*United States v. Plache,* 913 F.2d 1375, 1377 (9th Cir. 1990)...................................6

*United States v. Sandles,* 469 F.3d 508 (6th Cir. 2006)............................................12

*United States v. Shively*, 715 F.2d 260, 265 (7th Cir. 1983)...................................13

*United States v. Washburn*, 758 F.2d 1339, 1340 (9th Cir. 1985).........................11

## ARGUMENT

The arguments below address only those issues warrant a response. Those assignments of error are numbered as they were in Mr. Acosta's opening brief. For those assignments of error that are not addressed below, Mr. Acosta would rely on the original briefing on the issue.

## ASSIGNMENT OF ERROR NUMBER ONE

**THE DISTRICT COURT ERRED WHEN IT FAILED TO STRIKE JUROR NUMBER 11, WHO WAS PRESENT FOR THREE BANK ROBBERIES AT THE BANK OF AMERICA WHERE SHE WORKED.**

As the opening brief notes, a court must excuse a prospective juror if actual bias is revealed during voir dire.[1] Where a juror asserts that she can be fair and impartial, the court may excuse her based on her initial responses.[2] Although Venireman No. 22 said her involvement in robbery attempts while working at Bank of America would not affect her ability to be fair and impartial,[3] the court should have struck her for cause because her history made this position untenable.

*United States v. Allsup*[4] explained that courts should look for bias in a prospective juror's admissions of fact and evaluate bias revealed through circumstantial evidence, since "jurors are reluctant to admit bias." Bias is either

---

[1] *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977).
[2] *See United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995).
[3] RT. 1/8/08, p. 70.
[4] *United States v. Allsup,* 566 F.2d 68, 71 (9th Cir. 1977).

5

actual bias or implied bias. Because determinations of impartiality may be based largely upon demeanor, this court gives district court decisions deference and will not reverse findings of *actual* bias absent manifest error or an abuse of discretion. However *implied* bias is viewed as a mixed question of law and fact subject to *de novo* review.[5] *Smith v. Phillips*[6] noted that with implied bias, the issue is whether an average person in the position of the juror would be prejudiced.[7]

This court has found implied bias "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances."[8] The relevant inquiry is "whether [the] case presents…a relationship in which the 'potential for substantial emotional involvement, adversely affecting impartiality' is inherent."[9] Thus, implied bias might be found where a juror has had personal experience similar to the fact pattern at issue in the trial.[10]

---

[5] *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir. 1998).
[6] *Smith v. Phillips,* 455 U.S. 209, 222, 102 S.Ct. 940 (1982)
[7] *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260 (10th Cir. 1999), quoting *United States v. Torres,* 128 F.3d 38, 43 (2nd Cir. 1997).
[8] *Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir. 1979).
[9] *United States v. Plache,* 913 F.2d 1375, 1377 (9th Cir. 1990)(quoting *Tinsely).*
[10] *Tinsely v. Borg,* 895 F.2d 520, 527 (9th Cir. 1979).

For instance in *United States v. Julio Gonzalez*,[11] a juror had endured a relationship with and had the child of a man who bought and sold cocaine regularly. The juror divorced the man because of his involvement with drugs. Despite the juror's assurances to the contrary, the court concluded that she was likely unable to remain impartial where the government alleged the defendant endangered his family while trafficking cocaine. The court also focused on the equivocal nature of the juror's responses to questions about whether she could be impartial.

Here, Venireman 22 was working at Bank of America in the Phoenix metropolitan area when the teller next to her was robbed. She was also working during another bank robbery, as well as during a bomb threat. Notwithstanding her assurances of impartiality, the juror's admissions of fact revealed that she had personal experiences similar to the fact pattern at issue in the trial. An average person could not remain fair and impartial while deciding a case involving crimes against her former employer where the alleged crimes were similar to crimes that occurred while she was working. There was substantial potential for emotional involvement to adversely affect the juror's impartiality. Thus Mr. Acosta asks this court to find that the trial court erred in not granting his motion to excuse Veninerman 22 for cause.

---

[11]*United States v. Julio,* 214 F.3d 1109, 1114 (9th Cir 2000).

## ASSIGNMENT OF ERROR NUMBER TWO

**PROBATION OFFICER MORI EMMONS'S IDENTIFICATION TESTIMONY WAS IMPROPER SINCE MR. ACOSTA'S APPEARANCE HAD NOT MATERIALLY CHANGED AND BECAUSE MR. ACOSTA COULD NOT FULLY CROSS EXAMINE HER.**

As noted in the opening brief, testimony from a law enforcement officer that an individual in a photograph looks like the defendant at trial is generally "of dubious value"[12] since it is the jury's duty to decide for itself whether the defendant and the individual in photographs match.[13] Also, issues arise relative to the defendant's ability to confront such testimony because cross examination may open the door for much more damaging evidence. The Sixth Circuit has found that because of this, such testimony should be excluded from trial.

In *United States v. Calhoun,*[14] Mr. Calhoun objected to the Government's use of Mr. Calhoun's parole officer to testify that he thought the individual in bank surveillance photographs was the defendant. The defendant objected that he could not properly challenge the strength of the probation officer's testimony without revealing that the defendant was on parole. While the court did not directly address Sixth Amendment confrontation issues, the court noted that it was unclear

---

[12] *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993).
[13] *United States v. LaPierre,* 998 F.2d 1460, 1465 (9th Cir. 1993).
[14] *United States v. Calhoun,* 544 F.2d 291 (6th Cir. 1976)

whether the parole officer's testimony was "helpful to the determination of a fact in issue" as required by Rule 701(b).[15]

The Sixth Circuit has since suggested that for law enforcement identification testimony to be admissible, it must have some other relation to the case. For instance in *United States v. Maddox,*[16] the court explained that *Calhoun* did not prohibit the Government from offering the testimony of a police officer to identify the defendant from a photograph seized during a raid on a drug house.[17] Likewise, in *United States v. Monsour,*[18] the court found that *Calhoun* permitted the testimony of a bank security guard that the individual in surveillance photographs was the same individual whom he had seen acting suspiciously eight days earlier.[19]

Finally, in 2005 the Sixth Circuit again used the *Calhoun* rationale in *United States v. Dixon.*[20] There, the Government appealed the district court's prohibition of the defendant's ex-wife's testimony identifying the defendant from bank surveillance photographs. The Sixth Circuit noted that the crux of the matter was whether the defendant was prohibited from cross-examining the witness fully because of the witness's relationship with the defendant. The Sixth Circuit agreed with the trial court's reasoning that Dixon could not adequately cross-examine his

---

[15] *United States v. Calhoun,* 544 F.2d 291, 295 (6th Cir. 1976).

[16] *United States v. Maddox,* 944 F.2d 1223 (6th Cir. 1991).

[17] *United States v. Maddox,* 944 F.2d 1223, 1230 (6th Cir. 1991).

[18] *United States v. Monsour,* 893 F.2d 126, (6th Cir. 1990).

[19] *United State v. Monsour,* 893 F.2d 126, 128-129 (6th Cir. 1990).

[20] *United States v. Dixon,* 413 F.3d 540 (6th Cir. 2005)

ex-wife's potential bias without revealing that she "alleged spousal abuse and nonpayment of child support and the effect of his actions on their daughter."[21]

Unlike the Sixth Circuit, this court has been more permissive in the use of probation/parole officer identification testimony and finds the evidence admissible under two circumstances. The first is when the witness is more likely to correctly identify the person than the jury is because of "substantial and sustained contact,"[22] as was the case with a witness who met a defendant 50 times and another who knew a defendant most of his life.[23] The second category of cases is when the defendant's "courtroom appearance and his appearance at the time of the robbery were *significantly different*" and "the witness is familiar with the defendant as he appears in the photograph."[24]

The Government submits that there was a material restriction of Mr. Acosta's cross-examination of Ms. Emmons because defense counsel should have cross-examined Ms. Emmons on the physical circumstances of her contact, not the reason for the contact with Mr. Acosta.[25] This reasoning ignores the reality that Ms. Emmons is a professional witness and testified as one. When one compares Ms. Emmons's testimony to the testimony of Mike Riley or Kimberly Corrosco,

---

[21] *United States v. Dixon,* 413 F.3d 540, 546 (6th Cir. 2005).

[22] *United States v. Langford*, 802 F.2d 1176, 1178-79 (9th Cir. 1986).

[23] *Id.*

[24] *United States* v. *LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993).

[25] Government's answering brief page 22.

even the cold page reveals that Ms. Emmons's training has made her testimony more "solid and convincing" than that of the obviously nervous Riley and Corrosco. Counsel was unable to examine the witness about this without revealing that she was Mr. Acosta's probation officer. And while other items of evidence implicated Mr. Acosta in this robbery, none was more damaging that the professional testimony of his probation officer, Morri Emmons. As such, the error cannot be found to be harmless.

## ASSIGNMENT OF ERROR NUMBER FIVE

**THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE GOVERNMENT FAILED TO PROVE THAT THE BANK WAS INSURED BY THE FDIC.**

As the opening brief explains, the government must prove that the FDIC insured the bank on the date of the robbery.[26] As the government's brief concedes, an antedated certificate of insurance is insufficient proof[27] and additional evidence is needed.[28] As detailed in the opening brief, the government can establish this element in numerous ways.[29] However, at Mr. Acosta's trial, the government failed to offer sufficient proof, as it presented only a photocopy of an FDIC

---

[26] *United States v. Alexander*, 48 F.3d 1477, 1487 (9th Cir. 1995)(citations omitted).
[27] *Id* at 1488.
[28] *United States v. Washburn*, 758 F.2d 1339, 1340 (9th Cir. 1985).
[29] *Id*; 28 F.3d at 1487; *United States v. Huffman*, 1996 U.S. App. LEXIS 1655, *9 (9th Cir. 1996).

certificate issued over two years before the robberies[30] and a security officer's testimony that she believed the bank was FDIC insured.[31]

Defense counsel objected to the witness's discussion of the FDIC certificate and bank records, noting, "I don't know that…the Government has established a foundation of how she would know who made these[.]"[32] The government asked foundational questions about bank records, but never established that the security officer had knowledge of the bank's FDIC status. The only competent evidence was the antedated certificate, which fell short of the standard set by § 2113(f).

In *United States v. Sandles*,[33] the Sixth Circuit reversed a conviction on the ground that although a security officer's testimony was competent, it was not sufficient. The government needed additional evidence establishing that the FDIC insured the bank, since it failed to demonstrate that the witness had personal knowledge of insurance. The court explained that the witness's "knowledge of one fact—that the bank holds itself out as insured—is not…sufficient[.]"

This court has found that "a bank employee's uncontradicted testimony of a bank's insured status can sufficiently support the jury's conclusion that this element was proven beyond a reasonable doubt."[34] However, as *Sandles* points

---

[30] RT. 1/8/07, p. 172, ER.3

[31] RT. 1/8/08, pp. 167, 172, ER. 3.

[32] RT. 1/8/08, p. 168, ER. 3.

[33] *United States v. Sandles,* 469 F.3d 508 (6th Cir. 2006).

[34] *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000).

out, even though a witness's unchallenged statement that a bank is FDIC insured is sufficient, the fact remains that "a witness may not testify…unless evidence is introduced sufficient to support a finding [of] personal knowledge[.]"  Likewise, *United States v. Shiverly*[35] explains that even if the witness were permitted to testify regarding an antedated certificate, the witness must be able to establish that the insurance remained in effect at the time of the robbery.   The court reasoned that a witness merely testifying that he or she has known that fact for a long time is circular and does not establish why or how the witness knows the fact.[36]

The government's proof here suffers from the same infirmities as in *Sandles* and *Shiverly*.  The only competent evidence of FDIC insurance was a photocopy of an antedated FDIC certificate, evidence courts have found insufficient.  Mr. Acosta requests that this court reverse his conviction because the government failed to present evidence sufficient to support a conviction under 18 U.S.C. § 2113.

---

[35] *United States v. Shively*, 715 F.2d 260, 265 (7th Cir. 1983)("But there is no way in which a certificate of insurance issued in 1969 could be taken to refer to a bank's insured status in 1978 without any other evidence.").
[36] *Id.*

## ASSIGNMENT OF ERROR NUMBER SEVEN

**THE DISTRICT COURT ERRED BY CONCLUDING THAT MR. ACOSTA WAS A CAREER OFFENDER.**

The trial court found that Mr. Acosta was a career offender as to count two of the indictment and sentenced him to a term of 210 months to run concurrent to the 2005 bank robbery sentence in 03-CR-0751-PHX-EHC.[37]

Now the government asks this court to take judicial notice of a number of documents filed in the habeas proceeding for 03-CR-0751-PHX-ECH to support the trial court's finding that Mr. Acosta was a career offender. In support of its request, the government cites to *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*[38] In *Borneo*, this court took judicial notice of a California state court judgment issued in a case that previously litigated the same contract claims that were before this court. As the government notes, *Borneo* provides that this court may take judicial notice of other proceedings "if those proceedings have a *direct relation* to matters at issue." The second case that the government cites, *United States v. Cousins,*[39] did not elaborate on the legal standards applied in determining whether judicial notice is appropriate.

---

[37] RT. 1/11/08 p.m. p. 5, ER. 6.

[38] *United States ex rel. Robinson Racheria Citizens Counsel v. Borneo, Inc,* 971 F.2d 244-48 (9th Cir. 1992).

[39] *United States v. Cousins,* 429 F.2d 1271 n. 1 (9th Cir. 1970).

However, *Cousins* cites this court's opinion in *Lowe v. McDonald,*[40] which provides a brief explanation of the rules relating to judicial notice. In *Lowe,* as in *Borneo,* this court took judicial notice of a prior action between the same parties because the two actions were related. This court set forth the general rule that "a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence." This general rule has recognized exceptions, as where the two cases are "related litigation."

As noted above, the documents of which the government asks this court to take notice filed in Mr. Acosta's habeas corpus case, in which he is representing himself, and which involves offenses unrelated to the instant case. The documents in question were neither offered nor introduced into evidence during the trial of this case. Since they are not a part of the record in this case, Mr. Acosta urges this court to decline to take judicial notice or give them any weight in this appeal.

Further, even if the Government had introduced this material into evidence at the sentencing hearing, the document still fail to prove by clear and convincing evidence that Mr. Acosta was a career offender, as outlined in the opening brief.

---

[40] *Lowe v. McDonald*, 221 F.2d 228 (9th Cir. 1955).

## <u>CONCLUSION</u>

For the reasons discussed above and the reasons outlined in his opening brief, Mr. Acosta asks that this court reverse his conviction and sentence in this matter.

RESPECTFULLY SUBMITTED,

S/ Philip E. Hantel

Philip E. Hantel
Louisiana Bar No. 25078
Arizona Bar No. 024963
710 W. Roosevelt St.
Phoenix, Arizona 85007

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and the Ninth Circuit Rule 32-1, the attached reply brief is proportionately spaced with a type face of 14 point or more and contains 2737 words.  (Opening, answering, and the second and third briefs filed in cross appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words.)

February 10, 2009                                  s/ Philip E. Hantel
                                                        Philip E. Hantel

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2009, I electronically filed the forging with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system

Participants in this case wher are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that on February 11, 2009, I served one copy of Appellant's Reply Brief via United States Mail on Mr. Andrew Acosta, Reg No. 44014-008 FCI Tucson, P.O. Box. 23811, Tucson, Arizona 85734.


      S/ Philip E.  Hantel
Philip E. Hantel
Louisiana Bar No. 25078
Arizona Bar No. 024963
710 W. Roosevelt St.
Phoenix, Arizona 85003
(602) 252-1099